

ENTERED
04/06/2020

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| EMAS CHIYODA SUBSEA LIMITED, *et al* § | CASE NO: 17-31146 | |
| Debtor(s) § | | |
| § | CHAPTER 11 | |
| § | | |
| JOSHUA SEARCY, AS PLAN § | | |
| ADMINISTRATOR § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 19-03318 | |
| § | | |
| PHARMA-SAFE INDUSTRIAL SERVICES § | | |
| INC. § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

On February 27, 2019, Joshua Searcy, acting in his capacity as Plan Administrator of the Estate of EMAS Chiyoda Subsea, Inc. ("EMAS Subsea") initiated this adversary proceeding against Pharma-Safe Industrial Services, Inc. ("Pharma-Safe") seeking: (i) to avoid and recover a $39,168.32 payment pursuant to 11 U.S.C. §§ 547 and 550; and (ii) disallowance of any and all claims filed by Pharma-Safe pursuant to 11 U.S.C. § 502. Pharma-Safe failed to timely respond to the Plan Administrator's Complaint.

On June 19, 2010, the Plan Administrator filed a motion for default judgment based on Pharma-Safe's failure to respond to the Complaint. On July 12, 2019, Pharma-Safe filed its first response. Pharma-Safe's answer did not comply with this Court's Rule 7016 Conference Order. Subsequently, on August 19, 2019, the Court held a pre-trial conference at which it required Pharma-Safe to file an amended answer. Pharma-Safe did not file an amended answer as required by this Court.

On January 27, 2020, the Plan Administrator filed the motion for summary judgment currently at issue before the Court, seeking judgment as a matter of law on the preference claims against Pharma-Safe under 11 U.S.C. §§ 547 and 550. For the reasons set forth below, the Court grants the Plan Administrator's motion for summary judgment.

### **Background[1]**

On February 27, 2017, EMAS CHIYODA Subsea Ltd., *et al.*[2] (collectively, "the Debtors") filed chapter 11 bankruptcy. (Case No. 17-31146; *see* ECF No. 1). This Court entered an order allowing for the joint administration of the Debtors' chapter 11 cases on February 28, 2017. (Case No. 17-31146; *see* ECF No. 20).

On March 21, 2017 the Office of the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors. (Case No. 17-31146; *see* ECF No. 130). No trustee or examiner was appointed in the Debtors' chapter 11 cases. (ECF No. 16 at 4).

On or about May 8, 2017, Pharma-Safe Industrial Services, Inc. ("Pharma-Safe") filed proof of claim No. 317, requesting allowance of a general unsecured claim in the total amount of $99,563.85. (ECF No. 1 at 3).

On June 28, 2017, the Debtors filed their Modified Third Amended Plan of Reorganization, along with a Second Amended Plan Supplement. (Case No. 17-31146; *see* ECF

---

[1] A substantial portion of this background section was written in reliance on the parties' briefing. It is included solely for background. This background section does not constitute findings by the Court.

[2] The Debtors consist of: EMAS CHIYODA Subsea Ltd.; Lewek Falcon Shipping Pte. Ltd., Lewek Constellation Pte. Ltd; EMAS-AMC Pte., Ltd; EMAS CHIYODA Subsea Services Pte. Ltd.; EMAS Saudi Arabia Ltd.; EMAS Chiyoda Subsea Inc.; EMAS CHIYODA Subsea Marine Base Holding Co. LLC; EMAS CHIYODA Subsea Marine Base LLC; EMAS CHIYODA Subsea Services B.V.; EMAS CHIYODA Subsea Services (U.K.) Ltd.; EMAS CHIYODA ROV Pte. Ltd; EMAS CHIYODA Subsea Services LLC; EMAS CHIYODA Subsea (Thailand) Co., Ltd.; Gallatin Marine Management, LLC. (ECF No. 1 at 5).

Nos. 572, 574). The Plan Supplement included the Plan Administrator Agreement, which appointed Stephen H. McGuire as the Interim Plan Administrator. (Case No. 17-31146; ECF No. 572 at 29).

On June 29, 2017, the Court confirmed the Debtors' Third Amended Plan, which became effective on the same date. (Case No. 17-31146; *see* ECF No. 579). The Third Amended Plan, did not substantively consolidate the Debtors' chapter 11 cases, but instead allowed each of the Debtors to maintain their "own specific claims and causes of action." (Case No. 17-31146; *see* ECF No. 579 at 22 (noting that there are "Emerging Debtors")).

On September 28, 2017, in accordance with Section 7.1 of the Plan Administration Agreement, which was part of the Second Amended Plan Supplement, Stephen McGuire appointed Jason Searcy, "as the initial Successor Plan Administrator"—appointment which was to become effective on October 1, 2017. (Case No. 17-31146; *see* ECF No. 726). This Court approved Jason Searcy's appointment as the Successor Plan Administrator on February 11, 2019. (Case No. 17-31146; *see* ECF No. 932).

On February 27, 2019, Jason Searcy, in his capacity as Plan Administrator initiated this adversary proceeding against Pharma-Safe to: (i) avoid and recover a $39,168.32 payment pursuant to 11 U.S.C. §§ 547 and 550; and (ii) "disallow any claim that Pharma-Safe has filed or asserted against the Plan Debtors." (*See* ECF No. 1 at 1–2). Pharma-Safe failed to respond to the Plan Administrator's Complaint. Consequently, on June 19, 2019, the Plan Administrator filed a motion for default judgment. (*See* ECF No. 9). Pharma-Safe thereafter filed its first response on July 12, 2019. (*See* ECF No. 10). In light of Pharma-Safe's response, the Court denied the Plan Administrator's motion for default judgment on July 15, 2019. (*See* ECF No. 11).

On August 19, 2019, the Court held a pre-trial conference. (August 19, 2019 Hearing). At the hearing, the Court noted that Pharma-Safe's response failed to comply with this Court's Rule 7016 Conference Order. (August 19, 2019 Hearing at 1:36 p.m.). The Court required that Pharma-Safe file an amended answer by September 3, 2019. (August 19, 2019 Hearing at 1:37 p.m.). Pharma-Safe failed to file an amended answer as required by this Court. To the extent that Pharma-Safe has admitted claims in its initial response, the Court takes judicial notice of those admissions.

On January 27, 2020, the Plan Administrator filed the motion for summary judgment currently before the Court, seeking judgment as a matter of law as to its preference claims pursuant to 11 U.S.C. §§ 547 and 550. (*See* ECF No. 16). Pharma-Safe failed to respond to the Plan Administrator's motion for summary judgment. For the reasons set forth below, the Court grants the Plan Administrator's motion for summary judgment.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bank P. 7056 incorporates Fed. R. Civ. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of genuine dispute of material fact by establishing the absence of evidence supporting an essential element

of the non-movant's case. *Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.,* 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d. Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in light most favorable to the non-moving party at all times. *Plumhoff v. Rickard*, 572 U.S. 765 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusion allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the

summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enter., Inc.,* 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movants bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

**Analysis**

I. **11 U.S.C. § 547(b)**

The Plan Administrator filed a motion for summary judgment against Pharma-Safe to avoid an allegedly preferential transfer under § 547 of the Bankruptcy Code. (*See* ECF No. 1). The Bankruptcy Code allows avoidance of an interest of the debtor in property which is made: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the filing of the petition . . . ; (5) that enables such a creditor to receive more than such a creditor would receive if—(A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C § 547(b).

In order to successfully maintain a preferential transfer action, the burden of proof is upon the party alleging such a transfer, and the burden must be met by a preponderance of the evidence. 11 U.S.C. § 547(g). Here, that burden must be satisfied by the Plan Administrator, and the elements of § 547(b) must be satisfied conjunctively. The Plan Administrator sets forth various exhibits as summary judgment evidence, including his own affidavit ("Exhibit A"), EMAS Subsea's bank statements from February 2017 ("Exhibit A1"), and various invoices from Pharma-Safe ("Exhibit A2"). (ECF Nos. 16 at 10; *see* 16-1). Pharma-Safe did not file an amended answer, nor has it filed any pleading or motion responding to the Plan Administrator's motion for summary judgment. The Court will take each element in turn.

*For or on Account of an Antecedent Debt*

"First, we inquire into whether the transfer in this case was made in payment of an antecedent debt." *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba)*, 416 F.3d 394,

398 (5th Cir. 2009). "We begin, as always, with the text of the statute." *Id*. The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. §101(12). A "claim", in turn, is defined broadly as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. §101(5). "A debt is 'antecedent' for purposes of § 547(b) if it was incurred before the alleged preferential transfer." *In re Ramba*, 416 F.3d at 398 (citing *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996)).

The Plan Administrator has attached various invoices sent from Pharma-Safe to EMAS Subsea,[3] along with corresponding employee timesheets, which show the following dates and amounts:

| Invoice No. | Date | Amount |
|---|---|---|
| Invoice 415601 | August 17, 2016 | $5,250.00 |
| Invoice 415603 | August 17, 2016 | $7,500.00 |
| Invoice 415648 | August 29, 2016 | $3,000.00 |
| Invoice 415659 | August 31, 2016 | $168.32 |
| Invoice 415691 | September 7, 2016 | $5,250.00 |
| Invoice 415725 | September 16, 2016 | $5,250.00 |
| Invoice 415736 | September 21, 2016 | $5,250.00 |
| Invoice 415756 | September 28, 2016 | $5,250.00 |
| Invoice 415779 | September 30, 2016 | $2,250.00 |
|  | **Total:** | **$39,168.32** |

---

[3] In its initial response, Pharma-Safe admits that "it was a vendor that provided goods or services to the Debtors." (ECF No. 10 at 2).

8 / 14

(ECF No. 16-1 at 34, 36, 39, 41, 45, 47, 49, 51, 53).

Moreover, the Plan Administrator has also attached EMAS Subsea's account statement for the period of February 1, 2017 to February 28, 2017. (ECF No. 16-1 at 10–33). EMAS Subsea's account statement shows a payment made to Pharma-Safe, who is listed as a vendor, on February 23, 2017 for the amount of $39,168.32—the same amount invoiced during the August 2016 to September 2016 period. (ECF No. 16-1 at 28).

The invoices, employee timesheets, and EMAS Subsea's account statement taken together demonstrate that the $39,168.32 payment to Pharma-Safe was made for or on account of goods or services previously provided by Pharma-Safe to EMAS Subsea during the period of August 17, 2016 to September 30, 2016. Therefore, this requirement as to § 547(b) is met.

*An Interest of the Debtor in Property*

"What constitutes 'an interest of the debtor in property' is not precisely defined in the Bankruptcy Code." *Moser v. Bank of Tyler (In re Loggins),* 513 B.R. 682, 697 (Bankr. E.D. Tex. 2014). "However, the United States Supreme Court has declared that the phrase 'interest of the debtor in property' is coextensive with the term 'property of the debtor' found in" 11 U.S.C. § 541(a)(1); "thereby restricting the reach of a trustee's avoidance powers only to property that would have been a part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Id.* (quotations omitted). "In expounding upon this required element of a § 547(b) preference, the Fifth Circuit has noted that:"

> A debtor has an interest in property if that property would have been a part of the debtor's bankruptcy estate had the transfer not occurred. A trustee cannot avoid transfers of property unless the property would have been in the estate and therefore available to the debtor's general creditors. Essentially, a voidable preference must have depleted the estate. *Cage v. Wyo–Ben, Inc. (In re Ramba, Inc.),* 437 F.3d 457, 459–60 (5th Cir. 2006). "If funds cannot be used to pay the debtor's creditors, then they generally are not deemed an asset of the debtor's estate for preference purposes." *Jenkins v. Chase Home Mortg. Corp. (In re*

> *Maple Mortg., Inc.),* 81 F.3d 592, 595 (5th Cir. 1996). "[T]he test of whether a preference has occurred is not what the creditor receives but what the bankrupt's estate has lost because it is the diminution of the bankrupt's estate, not the unequal payment to creditors, which is the evil sought to be remedied by the avoidance of a preferential transfer. *Virginia Nat'l Bank v. Woodson*, 329 F.2d 836, 840 (4th Cir. 1964).

*In re Loggins,* 513 B.R. at 697. The $39,168.32 payment EMAS Subsea made to Pharma-Safe four days prior to its bankruptcy filing, depleted its bankruptcy estate—it represents an amount lost. Accordingly, the payment represents an interest of the debtor in property. This requirement is also met.

### To or for the Benefit of the Creditor

"[W]here the transfer of money occurred in satisfaction of a prepetition claim by a creditor . . . that transfer was undoubtedly made 'to or for the benefit of a creditor.'" *Pritchcard v. Wright Capital Corp. (In re Ecco Drilling Co., Ltd.)*, No. 09-6036, 2011 WL 3585633, at *3 (Bankr. E.D. Tex. Aug. 12, 2011). Here, Pharma-Safe received a payment from EMAS Subsea, one of its customers, for services performed or goods supplied prior to EMAS Subsea's chapter 11 filing. (*See* ECF No. 16-1 (listing EMAS Subsea as a customer in employee timesheets)). "The Defendant, as a creditor of the Debtor, received a transfer of money that diminished its claim against what would become the bankruptcy estate." *Id*. "That constitutes one 'to or for the benefit of a creditor.'" *Id*. (citing *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.),* 993 F.2d 117, 119 (5th Cir. 1993)).

Accordingly, this requirement is also met.

### Made on or within 90 days of the Petition Date

The Debtors filed chapter 11 bankruptcy on February 27, 2017. (Case No. 17-31146; *see* ECF No. 1). EMAS Subsea made the $39,168.32 payment to Pharma-Safe a mere 4 days before filing its bankruptcy petition. (ECF No. 16-1 at 28). Therefore, the payment was made within

10 / 14

the preferential period. *See* 11 U.S.C § 547(b)(4) ("[M]ade (A) on or within 90 days before the filing of the petition . . . ."). Accordingly, this requirement is also met.

*Made while the Debtor was Insolvent*

The Bankruptcy Code defines insolvency as a "financial condition such that the sum of [the] entity's debt is greater than all of [its] property, at a fair valuation . . . ." 11 U.S.C. § 101(32). Under § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). A defendant may seek to rebut the § 547 presumption of insolvency by introducing "some evidence to show that the debtor was solvent at the time of the transfer; mere speculative evidence of insolvency is not enough." *GasMark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998).

Here, the payment was made on February 23, 2017, only four days prior to EMAS Subsea's bankruptcy filing. Moreover, Pharma-Safe not only failed to file an amended answer, but wholly neglected to file a response to the Plan Administrator's motion for summary judgment. Therefore, the insolvency presumption in §547 applies.

This requirement under § 547(b) is met.

*The Payment Enables Such Creditor to Receive*
*More Than They Would Have Received in Chapter 7*

The final element requires the Plan Administrator "to present a hypothetical Chapter 7 distribution analysis as of the date the bankruptcy petition was filed." *Moser v. Bank of Tyler (In re Loggins),* 513 B.R. 682, 707 (Bankr. E.D. Tex. 2014). The following language is instructive of the process:

> The Supreme Court has held that whether a particular transfer is preferential should be determined not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the

alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results. The resulting analysis therefore requires that in determining the amount that the transfer enables [the] creditor to receive, such creditor must be charged with the value of what was transferred plus any additional amount that he would be entitled to receive from a Chapter 7 liquidation. *The net results is that, as long as the distribution in bankruptcy is less than one-hundred percent, any payment on account to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made*. Thus, the relevant inquiry for this Court is whether [creditor] would have received a 100 percent payout in a Chapter 7 liquidation. If so, no preference can be recovered; if not, the requirements of § 547(b)(5) are met. In performing this analysis, bankruptcy courts generally take judicial notice of the documents in a case, and it is also appropriate to take judicial notice of the Debtors' bankruptcy case as a whole.

*Id*. (quoting *Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.)*, 500 B.R. 384, 394 (Bankr. D. Del. 2013) (emphasis added) (citations omitted) (internal quotations omitted)). Thus, the issue before the Court is whether Pharma-Safe would have received a 100 percent payout in a Chapter 7 Liquidation.

Pharma-Safe filed proof of claim No. 317, requesting allowance of a general unsecured claim in the total amount of $99,563.85 on or about May 8, 2017.[4] (ECF No. 1 at 3). On June 29, 2017, the Court confirmed the Debtors' Third Amended Plan of Reorganization, which became effective on the same date. (Case No. 17-31146; *see* ECF No. 579). The Third Amended Plan did not substantively consolidate the Debtors' chapter 11 cases, but instead allowed each debtor to maintain their "own specific claims and causes of action." (Case No. 17-31146; *see* ECF No. 579 at 22 (noting that there are "Emerging Debtors")).

The Plan Administrator provided affidavit testimony in support of this element. He noted that "pursuant to section 5.11 of the Third Amended Plan, general unsecured claims [were] impaired and not expected to be paid in full." (ECF Nos. 1 at 5; *see* 579 at 88–89; 447 at 21 (noting general unsecured creditors' have an estimated recovery of 0.6 to 5.0%)). Pharma-Safe,

---

[4] Pharma-Safe admitted this claim in its first response. (ECF No. 10 at 2).

as a general unsecured creditor, would not have received a 100 percent payout in a Chapter 7 liquidation. Therefore, any payment received during the preference period would have allowed Pharma-Safe to recover more than it would have in a chapter 7 liquidation.

Accordingly, the Plan Administrator has met his burden to demonstrate that there is no genuine issue as to any material fact as to the presence of the elements of a preferential transfer under 11 U.S.C. § 547(b), and Pharma-Safe in failing to respond to the Plan Administrator's motion for summary judgment has failed to otherwise raise a genuine issue of material fact as to the existence of any defenses under 11 U.S.C. § 547(c).

## II. Recovery pursuant to 11 U.S.C. § 550

The Plan Administrator's motion for summary judgment next seeks to recover the avoided preference from Pharma-Safe under 11 U.S.C. § 550. (ECF No. 10 at 9–10). Under § 550(a)(1), "the Trustee may recover an avoided transfer, for the benefit of the estate from, 'the initial transferee of such transfer or the entity for whose benefit the transfer was made.'" *Schmidt v. The Grand Ltd.* (*In re Black Elk Energy Offshore Operations, LLC)*, 605 B.R. 138, 152 (Bankr. S.D. Tex. 2019). "The Fifth Circuit [has] held that an initial transferee is one who receives 'dominion and control over funds' directly from the debtor." *Id*. (citing *Cullen Center Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1419 (5th Cir. 1997)).

In paragraph 21 of his Complaint, the Plan Administrator sets forth the following claim: "The Debtors made transfer(s) of an interest of EMAS's property to or for the benefit of Pharma-Safe during the Preference Period through payments aggregating to an amount not less than $39,168.32 (the 'Transfer')." (ECF No. 1 at 6). In its first response, Pharma-Safe "admits the allegations in paragraph 21 of Plaintiff's Complaint." (ECF No. 10 at 3). Therefore, it is undisputed that Pharma-Safe received $39,168.32 from EMAS Subsea and exercised full control

13 / 14

over the payment, placing Pharma-Safe "within both the statute and the Fifth Circuit's definition of 'initial transferee.'" *In re Black Elk Energy Offshore Operations*, 605 B.R. at 152.

Accordingly, the Plan Administrator may recover the $39,168.32 avoided preference from Pharma-Safe under § 550(a)(1).

## Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **April 6, 2020.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE